THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:10cv027

| | |
|---|---|
| **LINDA D. HARRISON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' Motions for Summary Judgment [Docs. 11 and 13].

**I.   PROCEDURAL HISTORY**

Plaintiff Linda D. Harrison filed an application for a period of disability and disability insurance benefits, and Supplemental Security Income on May 7, 2007, alleging that she had become disabled as of June 1, 2006. [Transcript ("T.") 114, 119]. The Plaintiff's application was denied initially and on reconsideration. A hearing was held before Administrative Law Judge ("ALJ") Ann G. Paschall on October 19, 2009. [T. 47-65]. On January 22, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 12-19]. The Appeals Council accepted additional evidence but denied the Plaintiff's

request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. This exhaustion of administrative remedies leaves this case ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

2

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456.

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional

capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

On January 22, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 12-19]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date. [T. 14]. The ALJ then determined that right knee arthritis, left leg peripheral vascular disease, chronic obstructive pulmonary disease, mood disorder, anxiety, and somatoform disorder were severe impairments. [T. 14]. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [T. 15]. She then determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, with limitations of no climbing ladders, kneeling, crouching or crawling; only frequent stooping, balancing, and climbing stairs; and unskilled work with only occasional public contact. [T. 15]. She found that Plaintiff was unable

4

to perform any past relevant work. [T. 17]. Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ found that there were jobs in significant numbers that she could perform. [T. 18]. Accordingly, the ALJ concluded that the Plaintiff was not disabled from June 1, 2006 through the date of her decision. [T. 19].

**V.    DISCUSSION**

On appeal, Plaintiff challenges the ALJ's assessment of her RFC, her credibility, and the medical opinion evidence. Because the ALJ erred in weighing the medical source opinions of record and in her subsequent determination of Plaintiff's mental residual functional capacity, the Court will remand the matter for further administrative proceedings.

Regardless of its source, the ALJ is obligated to evaluate every medical opinion she receives. 20 C.F.R. § 404.1527(d). When evaluating the medical opinion of a treating physician, the ALJ must determine whether that opinion should be given controlling weight. Id. In order to be granted controlling weight, the opinion must be from a treating source; it must be a medical opinion concerning the nature and severity of the claimant's impairment; and it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R.§ 404.1527(d); Social

5

Security Ruling ("SSR") 96-2p. If an opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining the weight to be afforded to the opinion: 1) the examining relationship; 2) the length, nature, and extent of the treatment relationship; 3) the extent to which the evidence supports the opinion; 4) the opinion's consistency with the record as a whole; 5) the specialty of the medical source; and, 6) other relevant factors. 20 C.F.R. § 404.1527(d)(1)-(6).

In the present case, four accepted medical sources provided opinions regarding Plaintiff's mental impairments. Anthony Carraway, M.D. performed a consultative examination for Disability Determination Services (DDS) on January 16, 2008 [T. 412-16]; Bonny Gregory, M.D. performed a non-examining mental residual functional capacity assessment (MRFC) for DDS on January 23, 2008 [T. 425-28]; Eleanor Cruise, Ph.D. performed a non-examining MRFC and Psychiatric Review Technique (PRT) for DDS on May 30, 2008 [T. 477-94]; and Karen Marcus, Psy.D. performed a consultative examination and MRFC on September 25, 2009 [T. 590-605].

In his consultative examination of Plaintiff, Dr. Carraway concluded that Plaintiff had mild impairment of immediate memory, mild impairment of short-term memory, and minimal to mild impairment of attention and concentration.

6

He further found her ability to understand, retain, and perform instructions to be minimally to mildly impaired, and her stress tolerance to be mildly to moderately impaired. Dr. Carraway concluded that her ability to perform simple, routine repetitive tasks (SRRTs) "would be limited by her objective physical findings and her somatic complaints of pain. This would also limit her task persistence, but her anxiety and depression and irritability also may cause some moderate difficulty with task persistence." [T. 416].

Contrary to Dr. Carraway's findings, Dr. Gregory and Dr. Cruise in their non-examining consultative evaluations both concluded that Plaintiff could perform SRRTs without any significant limitation. [T. 427, 479]. Specifically, Dr. Gregory found that Plaintiff was capable of performing SRRTs in a low stress setting and low production setting with limited social demands in that she was able to understand and follow simple instructions and maintain attention and concentration to perform SRRTs. Dr. Gregory noted that Plaintiff would likely have difficulty with more detailed tasks, and that she would have difficulty interacting appropriately with co-workers and the general public and in adapting to changes in daily routines. [T. 427]. Similarly, Dr. Cruise concluded that Plaintiff was capable of performing SRRTs in that she was able to understand and remember simple directions, sustain

7

concentration to perform a small variety of simple tasks at a non-rapid to semi-rapid pace, relate appropriately in a work setting, and adapt to routine changes associated with simple tasks. [T. 479].

In her consultative examination of Plaintiff, Dr. Marcus diagnosed her with mood disorder, NOS; undifferentiated somatization disorder, and post-traumatic stress disorder, NOS. With respect to functioning, Dr. Marcus opined that Plaintiff demonstrated moderate limitations in her ability to understand, remember, and carry out simple instructions and moderately severe limitations with respect to more complex or detailed instructions. She further opined that Plaintiff had mild to moderate limitations in her ability to maintains social interactions with others, and that she would be "vulnerable to decline when under stress." [T. 599]. Dr. Marcus further noted that Plaintiff could benefit from mental health treatment, including psychotherapy to address her coping and management of affect as well as the consideration of appropriate medication to treat her symptoms. [T. 600].

In evaluating the medical source opinions of record, the ALJ attributed great weight to Drs. Cruise and Gregory's opinions, finding they were well-supported by the objective medical evidence and the reports provided by Plaintiff and her friends describing her daily activities and lifestyle. [T. 17].

8

The ALJ discredited Dr. Marcus' opinion, noting that Dr. Marcus had only examined Plaintiff once; that Plaintiff's treating cardiologist and orthopedist had not indicated any significant signs of anxiety or depression; that Plaintiff had not alleged any anxiety or depression in her testimony; and that Plaintiff had not received any mental health treatment and had not taken any medication for anxiety or depression. [Id.]. The ALJ made no reference in her decision to Dr. Carraway's opinion.

After carefully reviewing the record, the Court concludes that the ALJ erred in her evaluation of the medical source evidence. First, the ALJ improperly attributed great weight to the opinions of the non-examining consultants. Dr. Gregory gave no rationale whatsoever for her mental RFC findings. In conducting her evaluation, Dr. Gregory merely checked boxes on a form and failed to identify any medical basis for her opinion. Similarly, Dr. Cruise opined that Plaintiff could perform SRRTs without restriction but did not cite any other source for this proposition. Neither examiner addressed the findings of Dr. Carraway, which were of record and suggested limitations in Plaintiff's ability to perform such tasks. Because both Dr. Gregory and Dr. Cruise failed to demonstrate an adequate basis for their opinions, the Court

cannot conclude that their opinions provide substantial evidence to support the ALJ's mental RFC findings.

Second, it was error for the ALJ not to discuss and evaluate the opinion of Dr. Carraway as a consultative examiner. The Social Security Act requires the ALJ to consider all evidence submitted on behalf of a claimant. As such,"[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion." Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). As an examining consultant, Dr. Carraway's opinion was entitled to consideration and should have been evaluated pursuant to 20 C.F.R. § 404.1527(d). Given the contradictions between Dr. Carraway's findings and those of the non-examining consultants, the Court cannot conclude that the failure to consider Dr. Carraway's opinion was harmless error.

The Defendant contends that any error committed in the weighing of the medical source evidence was not prejudicial, as Drs. Gregory and Cruise's opinions regarding SRRTs are consistent with the longitudinal record. [Doc. 14 p. 6]. This argument echoes the ALJ's own rationale, namely that Plaintiff's lack of mental health treatment and her lack of complaints of mental health symptoms demonstrates a lack of limitations resulting from any mental impairments. [T. 17]. This argument, however, must be rejected.

10

Contrary to the implied findings of the ALJ, the record is not devoid of psychological complaints to treating physicians. Indeed, the ALJ found Plaintiff's anxiety and somataform disorder to be severe conditions, findings which themselves contradict this implication. Additionally, Dr. Watras, Plaintiff's primary treating physician, diagnosed her with "chronic anxiety" and noted that she appeared "stressed." [T. 454]. Dr. Watras' records further indicate that Plaintiff reported attempting to medicate her anxiety by smoking, a fact which contradicts the notion that she did not have a condition to medicate. [T. 451, 454]. Finally, Plaintiff's failure to report psychological problems to her treating cardiologist and orthopedist is not entirely unexpected given the narrow focus of such specialists. As such, the ALJ's conclusion that Dr. Marcus's findings regarding Plaintiff's anxiety were refuted by Plaintiff's failure to mention any symptoms of anxiety to these specialists is simply unwarranted.

For these reasons, the Court will remand this case for further administrative proceedings. In light of this decision, Plaintiff's other assignments of error need not be addressed but may be raised by her on remand.

11

Case 2:10-cv-00027-MR   Document 15   Filed 12/15/11   Page 11 of 12

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying him disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 11] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 15, 2011

Martin Reidinger
United States District Judge